# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **PAUL BAKER, Personal Representative** | ) | |
| **of the Estate of Lois Isabelle Matti,** | ) | |
| **deceased;** | ) | |
| **NELTA ROSE, by and** | ) | |
| **through IVAN D. ROSE, next of friend** | ) | |
| **and attorney-in-fact; and** | ) | |
| **IDABELLE SCHNOEBELEN, by and** | ) | |
| **through MICHAEL SCOTT MILLER** | ) | |
| **and SHAWN TREY MILLER, next of** | ) | |
| **friends and attorneys-in-fact,** | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-19-479-R** |
| | ) | |
| **JUSTIN BROWN, Director of Oklahoma** | ) | |
| **Department of Human Services (OKDHS),** | ) | |
| **in his official capacity; and** | ) | |
| **KEVIN CORBETT, Director of Oklahoma** | ) | |
| **Health Care Authority (OKHCA),** | ) | |
| **in his official capacity[1]** | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

## ORDER

Before the Court are the parties' cross-motions for summary judgment, Doc. Nos.

28, 31. Each party has responded in opposition to the other's motion. Doc. Nos. 38, 39.

---

[1] Plaintiffs initially filed this case against Ed Lake, Director of OKDHS and Becky Pasternik-Ikard, Director of OKDHCA. Those directors have since been succeeded by Justin Brown, and Kevin Corbett, respectively. In accordance with Federal Rule of Civil Procedure 25(d), Directors Brown and Corbett were automatically substituted as the proper Defendants herein.

Defendants have replied, Doc. No. 41; Plaintiffs have not. Defendants have also provided the Court with supplemental authority in support of their motion, Doc. No. 46, to which Plaintiffs have responded, Doc. No. 47. Defendants further move for oral argument, Doc. No. 42, to which Plaintiffs object, Doc. No. 44. Upon review, the Court grants Defendants' Motion for Summary Judgment, denies Plaintiffs' Motion for Summary Judgment, and denies Defendants' Motion for Oral Argument.

## I.      Background

On May 28, 2019, Plaintiffs Lois Matti, Nelta Rose, and Idabelle Schnoebelen filed suit alleging that OKDHS Director Justin Brown and OKDHCA Director Kevin Corbett discontinued their Medicaid benefits in violation of federal law.[2] Doc. No. 1. Below, the Court recites the undisputed material facts surrounding the cancellation of each Plaintiff's Medicaid benefits in turn.

Lois Matti, now deceased, was an elderly resident of Kingfisher County, Oklahoma, who, with the help of her son and attorney-in-fact, Paul Baker, applied for Medicaid services in Oklahoma on May 26, 2015. Doc. No. 28, ¶ 2; Doc. No. 31, ¶¶ 7–9. Prior to filing her application, Ms. Matti took certain steps to reduce her available resources. On April 2, 2015 and May 18, 2015, Ms. Matti transferred assets to Mr. Baker in exchange for two promissory notes in the amounts of $144,000.00 and $37,000.00, totaling $181,000.00. Doc. No. 28, ¶ 1; Doc. No. 31, ¶¶ 12–13. Thereafter, on June 3, 2016, OKDHS approved Ms. Matti's Medicaid application. Doc. No. 28, ¶ 5; Doc. No. 31, ¶ 14.

---

[2] The OKDHCA is the agency responsible for administering Medicaid programs in Oklahoma and it has designated the OKDHS responsible for making certain eligibility determinations. 63 O.S. § 5009(B); 42 C.F.R. § 431.10.

In 2016, 2017, and 2018, Mr. Baker transferred money to Ms. Matti as payment on the two 2015 notes. After each of Mr. Baker's payments, Ms. Matti transferred the money back to Mr. Baker in exchange for a new promissory note. Doc. No. 28, ¶¶ 3–4, 7–8, 10–12; Doc. No. 31, ¶¶ 17–23. After discovering these transactions, OKDHS issued a "Notice of Closure" discontinuing Ms. Matti's Medicaid benefits. Doc. No. 28, ¶ 14; Doc. No. 31, ¶ 25. OKDHS found that the payments on the two 2015 notes were invalid and as a result, the 2015 notes were in default such that the amounts due under the notes were counted as available resources above the Medicaid limit. Doc. No. 28, ¶ 15. Alternatively, it categorized the later notes as improper deferrals of the 2015 note payments and counted the notes as available resources above the Medicaid limit. *Id.* As a final rationale, it determined that the later notes were not bona fide and thus were countable as available resources above the Medicaid limit. *Id.* Ms. Matti appealed the decision, and an administrative hearing was held wherein the Administrative Law Judge affirmed OKDHS's determination. Doc. No. 31, ¶ 26–30.[3] Thereafter, on May 28, 2019, Ms. Matti further appealed the decision to OKDHS's Director. *Id.* ¶ 32. The parties have not indicated whether the Director has completed his final review.

---

[3] Plaintiffs deny the facts asserted by Defendants relating to the ALJ's decision on appeal, including those in paragraphs 26 to 30. Doc. No. 38, p. 6. Plaintiffs contend that all facts related to the ALJ's decision should be disregarded because the OKDHS's administrative process is under judicial review in *The Estate of Schultz v. Lake, et al.*, No. 19-CIV-00217-JD (W.D. Okla. 2020). Since the filing of Plaintiffs' response, the Court has dismissed *The Estate of Schultz* on jurisdictional grounds. *See id.* at Doc. Nos. 34, 35. In accordance with Federal Rule of Civil Procedure 56(e)(2), the Court considers Defendants' assertion of facts regarding OKDHS's administrative process—those found in paragraphs 26 to 32, 69 to 74, and 90 to 96—undisputed for purposes of Defendants' motion because Plaintiffs fail to otherwise properly address those facts.

Plaintiff Nelta Rose is a 92-year old resident of Woods County, Oklahoma, who, with the help of her son and attorney-in-fact, Ivan Rose, applied for Medicaid services in Oklahoma on March 2, 2017. Doc. No. 28, ¶ 17; Doc. No. 31, ¶¶ 53, 58.  Like Ms. Matti, Ms. Rose took certain steps to reduce her available resources prior to filing her application. In 2017, Ms. Rose transferred assets to Jean Rose—her daughter-in-law, Ivan Rose's wife—in exchange for two promissory notes in the amounts of $267,650.00 and $36,365.00, totaling $304,015.20. Doc. No. 28, ¶ 16; Doc. No. 31, ¶¶ 55, 61. On October 17, 2017, OKDHS approved Ms. Rose's application. Doc. No. 28, ¶ 18; Doc. No. 31, ¶ 62.

In 2018, OKDHS asked for verification that Ms. Rose received the first payment of $66,508.75 due on the 2017 notes. Doc. No. 28, ¶ 19. Ms. Rose provided evidence that Jean Rose fulfilled her 2018 payment obligations of $66,508.75 by paying certain personal and nursing home expenses for Ms. Rose, totaling $28,900.81, and by depositing the remainder—$37,607.94—into Ms. Rose's bank account. Doc. No. 28, ¶ 20; Doc. No. 31, ¶ 63–64. OKDHS then requested confirmation that the $37,607.94, which was presumably in Ms. Rose's possession, had been spent down.[4] In response, Ms. Rose notified OKDHS that on February 28, 2018 she transferred $37,700.00 back to Jean Rose in exchange for a promissory note. Doc. No. 28, ¶ 21; Doc. No. 31, ¶ 66. OKDHS followed up with a "Notice of Closure" discontinuing Ms. Rose's Medicaid benefits. Doc. No. 28, ¶ 23; Doc. No. 31, ¶ 67. Like in Ms. Matti's case, OKDHS found that Ms. Rose had available resources over the Medicaid limit based upon three rationales. First, it construed the 2018 promissory note

---

[4] A "spend down" occurs when a Medicaid beneficiary deducts funds spent toward medical care from those otherwise considered available for purposes of determining Medicaid eligibility.

transaction to be an invalid payment of the 2017 notes. Doc. No. 28, ¶ 24. Alternatively, it construed the 2018 note to be a deferral of the payments due on the 2017 notes. *Id.* Lastly, it found that the 2018 promissory note was not bona fide. *Id.* Ms. Rose appealed the decision, and an administrative hearing was held wherein the Administrative Law Judge affirmed OKDHS's determination. Doc. No. 31, ¶ 68–74.

Plaintiff Idabelle Schnoebelen is an 86-year old resident of Woodward County, Oklahoma, who, with the help of her two sons and attorneys-in-fact, Michael and Shawn Miller, applied for Medicaid services in Oklahoma on June 20, 2017. Doc. No. 28, ¶ 26; Doc. No. 31, ¶¶ 79, 82. Ms. Schnoebelen also took certain steps to reduce her available resources prior to filing her application. On June 15, 2017, she transferred assets to her two sons in exchange for a promissory note in the amount of $207,400.00. Doc. No. 28, ¶ 25; Doc. No. 31, ¶ 81. On November 28, 2017, OKDHS approved Ms. Schnoebelen's application. Doc. No. 28, ¶ 27; Doc. No. 31, ¶ 83.

In 2018, OKDHS requested verification that Ms. Schnoebelen received the first annual payment of $31,996.63 on the 2017 note. Doc. No. 31, ¶ 84. Ms. Schnoebelen provided evidence that her sons had fulfilled their 2018 payment obligations of $31,996.63 by paying certain of her legal, pharmaceutical, dental, and vision expenses, totaling $5,972.06, and depositing the remainder—$26,024.57—into their mother's bank account. Doc. No. 28, ¶ 29; Doc. No. 31, ¶ 85. Shortly thereafter, however, Ms. Schnoebelen transferred $26,100.00 back to her sons in exchange for a promissory note. Doc. No. 28, ¶ 30; Doc. No. 31, ¶ 86. Upon discovery of this, OKDHS issued a "Notice of Closure" discontinuing Ms. Schnoebelen's Medicaid benefits. Doc. No. 28, ¶ 32; Doc. No. 31, ¶ 87.

As in the two prior cases, OKDHS found that Ms. Schnoebelen had available resources over the Medicaid limit based upon three rationales. First, it construed the 2018 promissory note to be an invalid payment of the 2017 notes. Doc. No. 28, ¶ 33. Alternatively, it construed the notes to be a deferral of the payments due on the 2017 notes. *Id.* Lastly, it found that the 2018 promissory note was not bona fide. *Id.* Ms. Schnoebelen appealed the decision, and an administrative hearing was held wherein the Administrative Law Judge affirmed OKDHS's determination. Doc. No. 31, ¶ 90–93.

Ms. Schnoebelen then filed suit in federal court—alongside Ms. Matti and Ms. Rose—pursuant to 42 U.S.C. § 1983, alleging that the decision of Directors Brown and Corbett to terminate her Medicaid benefits violated federal law, namely 42 U.S.C. §§ 1396a(a)(8), 13960(c)(2)(C), and 20 C.F.R. § 416.1202. Doc. No. 1. Approximately three months after filing suit, on September 8, 2019, Ms. Matti passed away. Doc. No. 31, ¶ 42. Her son, attorney-in-fact, and personal representative of her estate, Paul Baker, was substituted as one of the named Plaintiffs in her place. Doc. No. 36. Both sides have since filed motions for summary judgment. Doc. Nos. 28, 31.

## II.    Standard of Review

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Hiatt v. Colo. Seminary*, 858 F.3d 1307, 1315 (10th Cir. 2017) (quoting Fed. R. Civ. P. 56(a)). A dispute is genuine "if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way," and it is material "if under the substantive law it is essential to the proper disposition of the claim." *Becker v. Bateman*, 709 F.3d

1019, 1022 (10th Cir. 2013)(internal quotation marks and citation omitted). In assessing whether summary judgment is appropriate, the Court views the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Williams v. FedEx Corp. Services*, 849 F.3d 889, 896 (10th Cir. 2017).

The parties' filing of cross-motions for summary judgment does not change this standard of review. *Atl. Richfield Co. v. Farm Credit Bank of Wichita,* 226 F.3d 1138, 1148 (10th Cir. 2000). The Court is to consider each motion on its own merits; "the denial of one does not require the grant of another." *Buell Cabinet Co., Inc. v. Sudduth,* 608 F.2d 431, 433 (10th Cir. 1979).

"To the extent the cross-motions overlap, however, the court may address the legal arguments together." *Skogen v. City of Overland Park*, No. CIV.A. 08-2657-DJW, 2010 WL 973375, at *3 (D. Kan. Mar. 16, 2010), *aff'd sub nom. Skogen v. City of Overland Park, Kan.*, 404 F. App'x 327 (10th Cir. 2010). If the granting of one motion requires the denial of the other, the Court need not delve into the other motion separately. *See Arroyo v. Geico Cas. Co.*, No. 2:16 CV 511, 2019 WL 415252, at *2 (N.D. Ind. Jan. 29, 2019) (noting that where cross-motions for summary judgment overlap, "[i]t is wasteful and unnecessary to address each motion separately."). The Court begins with Defendants' Motion for Summary Judgment.

### III.    Defendants' Motion for Summary Judgment

At the end of their motion, Defendants argue that both the Eleventh Amendment and the doctrine of mootness bar some of Plaintiffs' claims. Doc. No. 31, pp. 47–52. The Court addresses these challenges first, as they relate to the Court's jurisdiction. *See Kirby*

*v. Dallas Cnty. Adult Prob. Dep't*, 359 F. App'x 27, 32 (10th Cir. 2009); *Disability Law Ctr. v. Millcreek Health Ctr.*, 428 F.3d 992, 996 (10th Cir. 2005). The Court then addresses whether Defendants are entitled to summary judgment on the merits of those claims over which it has jurisdiction.

### A. Eleventh Amendment

The Eleventh Amendment prohibits citizens from suing states in federal court. *Lewis v. N.M. Dep't of Health,* 261 F.3d 970, 975 (10th Cir. 2001). However, the Supreme Court carved out an exception in *Ex parte Young,* 209 U.S. 123 (1908), which "permit[s] citizens to seek prospective equitable relief for violations of federal law committed by state officials in their official capacities." *Lewis*, 261 F.3d at 975. To proceed under *Ex parte Young*, a suit must: (1) be against state officials, not the state itself; (2) allege a non-frivolous violation of federal law; (3) seek only prospective equitable relief, not retroactive monetary compensation; and (4) not implicate "'special sovereignty interests.'" *Id.*

Only the third requirement is presently at issue. In their Complaint, Plaintiffs request both declaratory and injunctive relief. Doc. No. 1, p. 14. Defendants contend that Plaintiffs' request for declaratory relief—asking the Court to declare that Defendants violated Plaintiffs' federal rights by discontinuing their Medicaid benefits—violates the Eleventh Amendment. Doc. No. 28, p. 51. Tenth Circuit precedent holds that "[t]he Eleventh Amendment 'does not permit judgments against state officers declaring that they violated federal law in the past.'" *Johns v. Stewart,* 57 F.3d 1544, 1554–55 (10th Cir. 1995) (quoting

*P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.,* 506 U.S. 139, 146 (1993)). Thus, Plaintiffs' request for a declaratory judgment must be dismissed for lack of jurisdiction.[5]

As to Plaintiffs' request for injunctive relief, Plaintiffs ask the Court to order Defendants to cease denying Medicaid coverage to Plaintiffs, to certify Plaintiffs eligible for coverage from the date each was deemed ineligible, and to pay back-benefits accordingly. Doc. No. 1, p. 14. Although the Eleventh Amendment does not bar the Court from issuing an injunction requiring Defendants to certify Plaintiffs eligible for Medicaid going forward, it does prevent the Court from backdating its certification order. In *Lewis*, the Tenth Circuit distinguished permissible prospective relief—"ask[ing] that state officials be compelled to comply with federal statutes that allegedly entitle them to . . . services"—from retroactive monetary compensation barred by the *Ex parte Young* doctrine—"reimburse[ment] for past . . . services." 261 F.3d at 977–78. Certifying Plaintiffs eligible from the date each of them were deemed ineligible would "require[ ] payment of state funds . . . as a form of compensation," *Edelman v. Jordan,* 415 U.S. 651, 668 (1974), and thus constitutes improper relief. Therefore, Plaintiffs' request for retroactive injunctive relief is dismissed for lack of jurisdiction.[6]

---

[5] Plaintiffs formally request a declaratory judgment that Defendants "have violated and are violating Plaintiffs' federal rights by failing to certify them eligible for Medicaid benefits." Doc. No. 1. Plaintiffs thus appear to be requesting the Court declare that Defendants violated the law in the past and are continuing to violate the law in the present. However, based on Plaintiffs' briefing before the Court, the Court construes Plaintiffs' requested relief as noted above, asking the Court to declare only that OKDHS's *past* determinations—regarding Plaintiffs Medicaid eligibility—were made in violation of federal law. *See Papasan v. Allain*, 478 U.S. 265, 279 (1986) ("In discerning [whether a suit is barred by the Eleventh Amendment] we look to the substance rather than to the form of the relief sought"). Given this construction, the Court's dismissal of Plaintiffs' request for declaratory relief is proper.

[6] The Court has previously found, however, that Medicaid payments "extending back three months prior to any order of the Court that might grant Plaintiff[s] relief [in the form of an order requiring OKDHS to certify Plaintiffs eligible for Medicaid benefits going forward] would not run afoul of the Eleventh Amendment in light of 42 U.S.C. § 1396a(a)(34)." *See Pecha ex rel. Pecha-Weber v. Lake*, No. CIV-14-1356-R, 2015 WL 4460212, at *3 (W.D. Okla.

9

## B. Mootness

Defendants also argue that Plaintiffs' only remaining request for relief—that the Court order Defendants to certify Plaintiffs eligible for Medicaid going forward—is moot as to Ms. Matti because she is deceased. Doc. No. 31, pp. 47–51. Plaintiffs do not challenge Defendants' assertion. Doc. No. 38, p. 30. Instead, they argue that this mootness issue was remedied when Mr. Baker, the personal representative for Ms. Matti's estate, was substituted for Ms. Matti as one of the three named Plaintiffs. *See* Doc. No. 38, p. 32. Defendants respond that Ms. Matti's claim for injunctive relief is moot, regardless of whether it is brought in her name, or in the name of her estate. Doc. No. 31, pp. 49–51.

> "Mootness is a threshold issue because the existence of a live case or controversy is a constitutional prerequisite to federal court jurisdiction." *Rio Grande Silvery Minnow*, 601 F.3d at 1109 (quoting *Disability Law Ctr. v. Millcreek Health Ctr.*, 428 F.3d 992, 996 (10th Cir. 2005)).[] . . . Mootness is essentially "the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *S. Utah Wilderness All. v. Smith*, 110 F.3d 724, 727 (10th Cir. 1997) (quoting *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.22, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997)).

*Pecha by & through Pecha-Weber v. Lake*, 700 F. App'x 840, 844 (10th Cir. 2017) (unpublished). "Where a plaintiff seeks prospective equitable relief, such as an injunction, we have recognized that, for purposes of the mootness inquiry, . . . the plaintiff must show susceptibility to *continuing* injury." *Id.* (international citations and quotation marks omitted) (alteration in original). Relevant here, the Tenth Circuit has recognized "what

---

July 21, 2015) (citing *Morenz v. Wilson–Coker,* 415 F.3d 230, 237 (2d Cir.2005)). Put differently, if the Court were to grant Plaintiffs the prospective injunctive relief they request, Plaintiffs would also be due ancillary benefits extending back three months prior to any order of the Court, but no further. *See* 42 U.S.C. § 1396a(a)(34).

commonsense should already tell us: the dead . . . cannot suffer a continuing injury. Therefore, [an] action for injunctive (i.e. prospective) relief [brought by a deceased individual] is moot." *Pecha*, 700 F. App'x at 846; *see also, Tandy v. City of Wichita*, 380 F.3d 1277, 1290 (10th Cir. 2004) ("Beltz's claims for prospective relief are moot because he has died.").

Because of her death, Ms. Matti "cannot suffer a continuing injury." *See Pecha*, 700 F. App'x at 846. "The injunction sought here—requiring the [D]efendants to certify a deceased [Ms. Matti] eligible for benefits—can have no effect on future benefits." *Pecha by & through Pecha-Weber v. Lake*, 864 F.3d 1100 (10th Cir. 2017) (Hartz, J., concurring) It can only have an effect on past benefits allegedly due to Ms. Matti and is thus precluded as improper relief. The substitution of Ms. Matti's estate as a Plaintiff did not alter the relief Plaintiff Baker seeks, nor does it affect the Court's analysis. *See id.* (concluding that "even if [the deceased plaintiff's] estate is substituted as the plaintiff, no relief is available in federal court (regardless of whether [the plaintiff] was Medicaid eligible) so the case is moot."); *see also Estate of Schultz v. Brown, et al.*, No. CIV-19-00217-JD, at 15 (W.D. Okla. May 18, 2020) (citing Judge Hartz's concurrence in *Pecha* and dismissing plaintiff's claims for injunctive relief—requiring defendants to certify the deceased plaintiff eligible for Medicaid benefits—as moot, even though such relief was asserted by the deceased plaintiff's estate).

Based on the foregoing, Defendants are entitled to summary judgment on Plaintiffs' claim for declaratory relief, Plaintiffs' claim for retroactive injunctive relief, and Plaintiff Baker's claim for prospective injunctive relief, asserted on behalf of Ms. Matti's estate.

11

### C. Medicaid eligibility[7]

The only remaining claims are those asserted by Plaintiffs Ms. Rose and Ms. Schnoebelen for prospective injunctive relief, based upon Defendants' alleged improper discontinuation of Medicaid benefits.

Medicaid is designed to provide medical assistance to "families with dependent children and [to] aged, blind, or disabled individuals, whose income and resources are insufficient to meet the cost of necessary medical services . . . ." 42 U.S.C. § 1396–1. Although it is a federal program, it is implemented by the states. *See, e.g.*, OAC 317:35 *et seq.* States that elect to participate in Medicaid must comply with the Medicaid statute, and federal regulations. *See generally* 42 U.S.C. § 1396a; *Brown v. Day,* 555 F.3d 882, 885 (10th Cir. 2009). Additionally, States must comply with the Social Security Administration's Program Operations Manual System (POMS), "which . . . further construes the statutes governing" Medicaid. *Gragert v. Lake*, 541 F. App'x 853, 856 (10th Cir. 2013) (internal quotation marks omitted).[8]

One category of medical assistance provided by Medicaid is long-term care (Medicaid LTC), which pays for the care of individuals who live in institutions, such as nursing homes. *E.g.*, 42 U.S.C. § 1396a(a)(10)(A)(ii)(V). As relevant here, to qualify for

---

[7] The parties' arguments regarding Defendants' discontinuation of Plaintiffs' Medicaid benefits substantially overlap. *Compare* Doc. Nos. 31, pp. 36–44, 38, pp. 18–35 *with* Doc. Nos. 28, pp. 25–44, 39, pp. 19–35.  The Court addresses the overlapping arguments together. *See Skogen v. City of Overland Park*, No. CIV.A. 08-2657-DJW, 2010 WL 973375, at *3 (D. Kan. Mar. 16, 2010), *aff'd sub nom. Skogen v. City of Overland Park, Kan.*, 404 F. App'x 327 (10th Cir. 2010).

[8] The Court defers to the POMS provisions as neither party alleges the provisions are arbitrary, capricious, or contrary to law. *See Ramey v. Reinertson*, 268 F.3d 955, 964 (10th Cir. 2001).

Medicaid LTC, an individual must have countable resources of $2,000.00 or less. *E.g.,*

*Frantz ex rel. Spain v. Lake*, No. CIV-14-117-W, 2014 WL 4204875, at *4 (W.D. Okla.

Aug. 22, 2014).[9]

> Individuals have attempted by various means to shelter resources—*i.e.,* to purposely render them not currently "available"—in order to qualify for Medicaid. . . . One such sheltering strategy is crude and straightforward: the transfer of an asset as a gift, or for less than fair market value. Congress has attempted to remove any economic incentive to pursue that strategy by imposing a penalty period, during which the transferor is ineligible to receive Medicaid benefits. 42 U.S.C. § 1396p(c). A second sheltering strategy is the placement of assets in a trust. In 1999, Congress amended the statute to close that loophole. A trust or a "legal instrument or device that is similar to a trust," sometimes called a "trust-like device," is now deemed a countable, available asset of the beneficiary. 42 U.S.C. § 1382b(e)(6)(A)(SSI); 42 U.S.C. § 1396p(d)(6) (Medicaid). Thus DHS will determine whether a trust-like device is being used to park assets in friendly hands. A third sheltering strategy is to lend out cash, either informally or by purchasing a promissory note, as Plaintiffs did here. A cash loan or promissory note may, however, be considered a countable and available resource in three ways: the funds could be deemed "available," the purchase of the note could be deemed an asset transfer for less than fair market value, or the loan/note could be deemed a trust-like device.

*Landy v. Velez*, 958 F. Supp. 2d 545, 552–53 (D.N.J. 2013)(original paragraph structure

omitted).

As noted previously, OKDHS found Plaintiffs ineligible for Medicaid LTC benefits

under three separate rationales at the administrative level. First, it construed Plaintiffs'

2018 promissory notes as invalid payments on Plaintiffs' original notes, issued in 2017.

Doc. No. 32-11, 32-27. This construction put the borrowers in default on the 2017 notes

---

[9] For purposes of Medicaid, the term "resource" is synonymous with the word "asset." *E.g.*, 20 C.F.R. § 416.120(c)(3)("[r]esources means cash or other liquid assets or any real or personal property that an individual . . . owns and could convert to cash to be used for [her] support and maintenance").

such that the amounts due thereunder were considered available resources, placing Plaintiffs above the Medicaid limit. *Id.* Alternatively, OKDHS found that both Plaintiffs purchased their 2018 promissory notes to defer payment on the 2017 notes such that the amounts due under the 2017 notes and the 2018 notes were available resources, placing Plaintiffs above the Medicaid limit. Doc. Nos. 32-11, pp. 2–5, 32-27, pp. 2–6. Lastly, it found that the 2018 notes were not bona fide notes, but trust-like devices, and therefore counted them as available resources, placing Plaintiffs above the Medicaid limit. Doc. Nos. 32-11, p. 5, 32-27, p. 6. Defendants do not argue that summary judgment is warranted based upon OKDHS's first administrative rationale. Instead, they contend that summary judgment is warranted based upon the second and third rationales, arguing that those determinations were factually correct, and made in accordance with federal laws and regulations. Doc. No. 31, pp. 36–44. Plaintiffs argue that OKDHS's determinations were made in direct violation of those same laws and regulations. Doc. No. 38, pp. 13–27.

Regarding OKDHS's second rationale at the administrative level, Defendants contend that Plaintiffs were properly denied benefits because their 2018 promissory notes did not meet the requirements of 42 U.S.C. § 1396p(c)(1)(I). Doc. No. 31, p. 43. Under 42 U.S.C. § 1396p(c)(1)(A), if a Medicaid applicant transfers resources for less than fair market value during the sixty-month period before submitting an application, the applicant will be subject to a penalty period.[10] The statute provides exemptions for certain financial

---

[10] Generally speaking, the penalty period is calculated by "dividing the amount of the transfer by the monthly regional nursing home rate and the quotient is the number of months that Medicaid will not pay." *Harper v. Okla. ex rel. Okla. Dep't of Human Serv's*, No. Civ-10-514-R, Doc. No. 45, at 14 (W.D. Okla. Mar. 22, 2011) (unpublished).

14

instruments, including promissory notes. To be exempted from § 1396p(c)(1)(A)'s penalty period, a promissory note must:

> (i) ha[ve] a repayment term that is actuarially sound (as determined in accordance with actuarial publications of the Office of the Chief Actuary of the Social Security Administration);
> (ii) provide[] for payments to be made in equal amounts during the term of the loan, with no deferral and no balloon payments made; and
> (iii) prohibit[] the cancellation of the balance upon the death of the lender.

42 U.S.C. § 1396p(c)(1)(I). In the event a promissory note does not meet this criteria, the value of the note for purposes of calculating the penalty period is the outstanding balance thereof. *Id.*; *see also Harper v. Okla. ex rel. Okla. Dep't of Human Serv's*, No. Civ-10-514-R, Doc. No. 45, at 14 (W.D. Okla. Mar. 22, 2011) (unpublished).

In their motion, and in response to Plaintiffs' motion, Defendants argue that the 2018 promissory notes were deferral payments on Plaintiffs' 2017 notes, and therefore, the 2018 notes fail to meet criteria (ii). Doc. No. 38, p. 43; Doc. No. 39, pp. 19–26. Plaintiffs argue that prior case law from the Western District and expert testimony foreclose Defendants' contention. Doc. No. 28, pp. 25–30, 40–44. Additionally, Plaintiffs argue that Defendants misapply § 1396p(c). Doc. No. 38, pp. 11–14.

The Court need not address either parties' arguments. At the administrative level, OKDHS did not conclude that Plaintiffs were eligible for assistance subject to a penalty period because their 2018 promissory notes were unexempted transfers of assets for less than fair market value. Nor do they raise that contention before the Court here. Rather, OKDHS concluded, and Defendants argue here, that Plaintiffs were ineligible for Medicaid benefits altogether because they had resources exceeding the Medicaid limit. *See* Doc. Nos.

32-11, 32-13, pp. 12, 32-27, 32-29, p. 10; Doc. No. 31, p. 12. Thus, whether Plaintiffs' 2018 promissory notes meet the requirements of § 1396p(c)(1)(I) is not outcome determinative. *See Harper*, No. Civ-10-514-R, Doc. No. 45, at 14.[11]

Regarding OKDHS's third rationale at the administrative level—that Plaintiffs' 2018 notes were not bona fide notes, but trust-like devices—the Court's review involves two layers of analysis. The Court must first determine whether the notes were bona fide, and if so, whether they were properly considered trust-like devices.

Defendants argue that OKDHS's administrative assessment stands because Plaintiffs' 2018 promissory notes were not bona fide. Doc. No. 31, p. 39–43; Doc. No. 39, pp. 20–21. Under POMS § 1140.300(D)(1) the Court is to "[a]ssume, absent evidence to the contrary, that [a] written agreement is bona fide . . . ." In this case, Defendants contend there is "evidence to the contrary." Doc. No. 31, p. 39–43; Doc. No. 39, pp. 20–21.

A bona fide agreement is defined as an agreement that is "legally valid under the applicable State's law and made in good faith." POMS § 1120.220(B)(3). Defendants do not challenge the legality of Plaintiffs' 2018 promissory notes under Oklahoma law. Instead, they contend that the promissory notes were not executed in good faith. Plaintiffs

---

[11] If OKDHS's outright cancellation of Plaintiffs' Medicaid benefits was based entirely upon a finding that the 2018 promissory notes were a transfer of assets for less than fair market value, and failed to satisfy the requirements of § 1396p(c)(1)(I) because they were deferral payments on the original 2017 notes, OKDHS's determination may be in violation of federal law. *See* 42 U.S.C. § 1396(c)(1)(A) (requiring an applicant be eligible for Medicaid benefits, but subject to a penalty period in such circumstances). Plaintiffs alleged deferral payments and failure to comply with § 1396p(c)(1)(I) could only have resulted in an outright cancellation of Medicaid benefits under § 1396p(c)(1)(A) if Plaintiffs were found to be "institutionalized individuals." OKDHS made no such finding at the administrative level, and the record before the Court does not support such a finding. However, because OKDHS rested their determination on valid alternative grounds, *see* Doc. No. 32–11, 32-27, the Court does not find that Defendants violated federal law when OKDHS found Plaintiffs ineligible for Medicaid benefits.

fail to address Defendants' good faith argument, suggesting that the only relevant factors to consider are those in POMS § 1120.220(D).[12] Doc. No. 38, pp. 18–19; Doc. No. 30–36. The Court disagrees. In addition to satisfying the informal loan requirements under POMS § 1120.220(D), to be exempted from the resource-counting rules, a "promissory note must also be bona fide." *Sable v. Velez*, 437 F. App'x 73, 77 (3d Cir. 2011)(citing POMS § 1140.300(D)(1)); *see also Landy*, 958 F. Supp. 2d at 556–59. Thus, "the Court, may, and must, review the loans for good faith." *See Landy*, 958 F. Supp. 2d at 558.

Good faith is not defined in the POMS. The phrase must therefore be given its ordinary meaning. *See Asgrow Seed Co. v. Winterboer*, 513 U.S. 179, 187 (1995). Good faith means "honest in fact in the conduct or transaction concerned." *See American Exch. Bank, Collinsville, Okl. v. Cessna*, 386 F. Supp. 494, 498 (N.D. Okla. 1974); *see also* Good Faith, *Black's Law Dictionary*, (11th ed. 2019) ("state of mind consisting in (1) honesty and belief in purpose, (2) faithfulness to one's duty or obligation, (3) observance of reasonable commercial standards of fair dealing in a given trade or business, or (4) absence of intent to defraud or to seek unconscionable advantage."). The Court finds—consistent with at least one other federal court that has addressed the exact issue—that this ordinary meaning of good faith should apply here. *See Landy*, 958 F. Supp. 2d at 558.

> To determine whether a loan was entered into in good faith, a court should look at all of the facts and circumstances surrounding it. *See Sable*, 2010 WL 5140004 at *3 (district court opinion); *see also Sable II*, 437 Fed. Appx. at

---

[12] Under POMS § 1120.220(D), an informal loan may be bona fide if (1) it is enforceable under state law, (2) was in effect at the time the cash proceeds were provided, (3) there is an acknowledgment of an obligation to repay, (4) there is a plan for repayment, and (5) the repayment plan is feasible. While Defendants do not allege that Plaintiffs failed to comply with this provision in their Motion for Summary Judgment, they do make the argument in their response to Plaintiffs' Motion for Summary Judgment. Doc. No. 39, p. 23–25. The Court need not address the parties' contentions regarding POMS § 1120.220(D) because the Court ultimately determines that, even assuming Plaintiffs satisfy POMS § 1120.220(D), Plaintiffs' 2018 notes were not made in good faith and are thus not bona fide.

77; *Wesner*, 2010 WL 1609674 at *8. A nonexclusive list of factors that may play into this analysis include whether (1) the entities are related or are at arm's length; (2) the lender is in the business of lending money; (3) the borrower has power of attorney over the lender; (4) the loan is backed by collateral; (5) documentation existed regarding the borrower's ability to repay the loan; (6) the date of the loan is close to the date the lender applied for Medicaid; (7) the amount of the loan brought the lender close to or under the maximum resource threshold for Medicaid eligibility; (8) payments on the loans were late; and (9) the loan was disclosed in the lender's Medicaid application. *Sable II,* 437 Fed.Appx. at 77; *Wesner,* 2010 WL 1609674 at *8.

*Id.* at 558–59.

Most of these factors weigh in favor of a finding that Plaintiffs' 2018 notes were not made in good faith. The loans were not arm's-length transactions in the marketplace; as to both Plaintiffs, they were informal loans between a mother and her close relatives. Doc. No. 31, ¶¶ 55–66, 79–86. Neither Plaintiff Rose nor Plaintiff Schnoebelen are in the business of lending money. Doc. No. 32-2, p. 100:3–6; Doc. No. 32-30, p. 28:17–22. Plaintiff Schnoebelen's children and borrowers, Michael Miller and Shawn Miller, both have power of attorney over their mother. Doc. No. 31, ¶ 79. Neither Plaintiff's loan is backed by collateral. Doc. No. 32–10; Doc. No. 32–6. There was also no documentation regarding the borrower's ability to repay the loans. Doc. No. 32-2, p. 73:2–82:25; Doc. No. 32-30, p. 29:3–14; Doc. No. 32-31, p. 26:12–20. Finally, the amount of the 2018 promissory notes clearly brought Plaintiffs closer to the Medicaid limit as it reduced their available resources by $37,700.00 and $26,100.00, respectively. Moreover, both Ms. Rose's son and Ms. Schnoebelen's son testified that the promissory notes were executed, at least in part, so their mothers could be eligible for Medicaid. *See* Doc. No. 32-2, p. 93:6–9; Doc. No. 32-30, p. 56:15–23.

18

The two factors that weigh against Defendants include the fact that Ms. Rose's daughter-in-law and borrower, Jean Rose, does not have power of attorney over Ms. Rose—though, Jean Rose's husband, Ivan Rose, does have power of attorney over Ms. Rose. *Id.* ¶ 53. Additionally, Plaintiffs disclosed their 2017 promissory notes in their Medicaid applications—though, the 2018 notes were not disclosed until OKDHS requested additional information regarding Plaintiffs' Medicaid applications. *See* Doc. No. 31, ¶¶ 63–66, 83–85.

The only remaining factor—whether payments on the notes were late—does not weigh in either party's favor because there is no information in the record regarding whether the borrowers made timely payments on the 2018 notes in 2019 or in 2020.

Based on the foregoing, the Court finds that Plaintiffs' loans and promissory note transactions in 2018 were not made in good faith and were thus not bona fide. The majority of factors weigh in favor of such a finding, as does the determination of other courts that have considered the issue. *See Landy v. Velez*, 958 F. Supp. 2d 545, 559 (D.N.J. 2013) (finding at the preliminary injunction stage that defendants were likely to succeed on the merits in proving that plaintiff's loan and promissory note transaction was not made in good faith after a majority of the aforementioned factors favored defendants). Defendants are therefore entitled to summary judgment as federal law was not violated when OKDHS concluded that Plaintiffs' 2018 promissory notes were not bona fide, and thus were countable, available resources in determining Plaintiffs' Medicaid eligibility.

The Court does not, however, end its analysis there. Out of an abundance of caution, the Court addresses whether the notes were properly considered trust-like devices.[13] This analysis involves two steps. The first step requires a determination of "whether the notes qualify under the regular [Supplemental Security Income] resource-counting rules as . . . promissory notes according to the Social Security Administration's [POMS]." *See Sable v. Velez*, 437 F. App'x 73, 76 (3d Cir. 2011).[14] If the notes do not qualify as resources under those rules, "then the analysis proceeds to whether the notes are to be considered as trust-like devices pursuant to the POMS § 1120.201." *Id.*

Under SSI resource-counting rules, "[i]f the individual has the right, authority or power to liquidate the property . . . , it is considered a resource[, but] [i]f a property right cannot be liquidated, the property will not be considered a resource of the individual . . . ." 20 C.F.R. § 416.1201(a)(1). "Liquid resources are cash or other property which can be converted to cash within 20 days," *Id.* § 416.1201(b).

> [P]romissory notes are *ordinarily* liquid. . . . But that is because promissory notes are ordinarily transferable and hence convertible to cash. If a promissory note cannot be transferred . . . , then it is not convertible to cash

---

[13] Plaintiffs argue the Court should ignore Defendants' argument that the relevant notes are trust-like devices because to address the issue on the merits would constitute "trial by ambush." Doc. No. 38, pp. 20–22. They allege that up until Defendants' summary judgment briefing before the Court, Defendants had never mentioned the issue of trust-like devices. *Id.* Plaintiffs are mistaken. In OKDHS's "Notice of Closure" letters, sent to both Plaintiffs Rose and Schnoebelen in 2018, OKDHS stated that Plaintiffs' promissory notes were not bona fide notes, and cited for support POMS § 1120.200(D)—relating to "Trusts that are resources"—and the portion of *Landy v. Velez*, 958 F. Supp. 2d 545, 561–62 (D.N.J. July 17, 2013) wherein the court recorded its determination that a promissory note was properly considered to be a trust-like device, and not a bona fide note. *See* Doc. Nos. 32-11, p. 5, 32-27, p. 6. Additionally, in Plaintiff Schnoebelen's appeal, the administrative law judge noted explicitly that in 2019 OKDHS argued Plaintiff's promissory notes were trust-like devices under the POMS. Doc. No. 32-29, p. 3.

[14] Consistent with the above, the Tenth Circuit has found that "in determining Medicaid eligibility, state agencies must use criteria that are no more restrictive than the eligibility requirements under the Supplemental Security Income (SSI) Act. . . . Thus, the SSI regulation that defines what constitutes a resource, 20 C.F.R. § 416.1201, properly guides the analysis here." *Gragert*, 541 F. App'x at 856 (internal citations and quotation marks omitted).

and therefore not a resource. Indeed, POMS indicate that notes count as resources for eligibility purposes *unless* there is "evidence of a legal bar to the[ir] sale."

*Gragert*, 541 Fed. App'x at 857 (citing 20 C.F.R. § 416.1201(b) and POMS SI 01140.300 at D(1), D(3))(internal quotation marks omitted). The 2018 notes at issue here expressly provide that neither Ms. Rose nor Ms. Schnoebelen "may grant, bargain, sell, assign, convey or transfer th[e] note[s] or any payments [t]hereunder except [Plaintiffs] may assign or transfer th[e] note for estate planning purposes to a revocable trust . . . ." Doc. Nos. 32-10, p. 2, 32-26, p. 2. Consistent with both Tenth Circuit precedent and the Court's prior decisions, this express language demonstrates that Plaintiffs' 2018 notes cannot be readily converted to cash and are, therefore illiquid under § 416.1201. *See, e.g.*, *Gragert*, 541 Fed. App'x at 857; *Peterson ex rel. Jones v. Lake*, No. CIV-13-1235-W, 2014 WL 2949509, at *5 (W.D. Okla. June 30, 2014). Accordingly, the notes do not qualify as available resources under the first step.

Consequently, the Court proceeds to the second step:  determining whether the notes were properly considered trust-like devices pursuant to POMS § 1120.201. A trust-like device is a countable, available resource and is defined as "a legal instrument, device or arrangement, which may not be called a trust under State law but is similar to a trust." *Shackelford v. Lake*, No. CIV-15-0218-HE, 2016 WL 6993960, at *4 (W.D. Okla. Nov. 29, 2016) (quoting POMS § 1120.201(B)(5)).[15] It "must include: (1) a grantor (2) who transfers property (3) to an individual or entity with fiduciary obligations (a trustee) (4)

---

[15] The language that was once in POMS § 1120.201(B)(5) is now found in POMS § 1120.201(B)(4).

with the intention that it be held, managed or administered by the individual or entity for the benefit of the grantor or others." *Peterson*, 2014 WL 2949509, at *3 n.6 (internal citation and quotation marks omitted).

Defendants assert that Plaintiffs' 2018 promissory notes satisfy each element. Doc. No. 31, pp. 43–44. Plaintiffs object, arguing that three of the Court's previously decided cases foreclose a judgment in Defendants' favor. Doc. No. 38, p. 23–27.

The first case Plaintiffs cite has been vacated. *See* Doc. No. 38, p. 23 (citing *Lemmons v. Lake*, No. CIV-12-1075-C, 2013 WL 1187840, at *1–2 (W.D. Okla. Mar. 21, 2013), *vacated as moot*, 2013 WL 6913757 (W.D. Okla. June 28, 2013)). In the other two cases—*Frantz v. Lake*, 2014 WL 4204875, at * 10–12 n.4 (W.D. Okla. Aug. 22, 2014) and *Peterson v. Lake*, 2014 WL 2949509, at *9–11 n.6 (W.D. Okla. June 30, 2014)—the Court simply found that there was no evidence in the record as to elements (3) and (4). In this case, however, there is evidence in the record demonstrating each element.

There is no question that Plaintiffs are properly considered grantors who transferred property. Plaintiffs also transferred that property to individuals with fiduciary obligations. Under Oklahoma law, "[t]he expression 'fiduciary or confidential relationship' has a broad meaning and includes technical relations and informal relations in which one person trusts and relies on another." *Krug v. Helmerich & Payne, Inc.*, 320 P.3d 1012, 1017 (Okla. 2014). Such a relationship exists "whenever trust and confidence are placed by one person in the integrity and fidelity of another." *E.g., MidAmerica Fed. Sav. & Loan Ass'n v. Shearson/Am. Exp., Inc.*, 886 F.2d 1249, 1257 (10th Cir. 1989). However, before a court "declare[s] a relationship fiduciary it '[must] require a relation where there is weakness on

22

one side and strength on the other resulting in dependence or trust justifiably reposed in the stronger.'" *Id.* (quoting *Matter of Estate of Beal*, 769 P.2d 150, 155 (Okla. 1989)).

Here, Ms. Rose transferred property to a fiduciary: her daughter-in-law, Jean Rose, who is the wife of Ms. Rose's son and attorney-in-fact, Ivan Rose. She is also the sole member of Jivin, LLC—a company that holds the money Ms. Rose loaned to Jean Rose and which has a corporate purpose of paying for Ms. Rose's needs. Doc. No. 32-2, p. 23:9–24:7. As the wife of Ms. Rose's attorney-in-fact, and as the sole corporate officer in charge of the money Ms. Rose needed to pay for her livelihood, Jean was certainly in a position of strength. And as an elderly person who was seeking the physical and financial care of others, Ms. Rose was certainly in a position of weakness. That Jean was Ms. Rose's daughter-in-law further elevates the atmosphere of trust and confidence regarding the transactions at issue herein. *See Landy*, 958 F. Supp. 2d at 562 ("Loans between close relatives . . . are often made in an atmosphere of trust and confidence . . . .")(internal quotation marks and citation omitted). Plaintiff Schnoebelen likewise transferred property to fiduciaries:  her two sons, who were also her attorneys-in-fact. Doc. No. 31, ¶ 79; *see Harper*, No. Civ-10-514-R at 15 (noting transferor's daughter, and attorney-in-fact, was a fiduciary in the context of determining whether a promissory note was properly considered a trust-like device for purposes of determining Medicaid eligibility).

Finally, those transfers were made with the intention that the money be held in order to pay for the needs of Plaintiffs Rose and Schnoebelen, respectively. Ivan Rose admitted in his sworn deposition that the purpose of his mother's loans was, at least in part, to enable him and his wife to pay for items his mother needed. *See* Doc. No. 32-2, p. 72:4–12, 32:5–

16. And after Ms. Rose executed the 2018 promissory note, Jean Rose transferred the money to Jivin, LLC, *see* Doc. No. 38, p. 25, a company whose purpose, as mentioned above, was to "take care of [Ms. Rose's] needs", Doc. No. 32-2, p. 23:9–24:7.[16]

Likewise, both Michael and Shawn Miller testified that the purpose of their mother's loan, in exchange for the 2018 note, was to enable them to provide care for their mother's medical and legal expenses, in addition to any home repairs or other unforeseen miscellaneous expenses down the road. Doc. No. 53, p. 44:22–45:20, 56:7–14, 60:17–61:1; Doc. No. 54, p. 21:9–17. What's more, Shawn Miller testified that the money his mother transferred to him and his brother was kept in its own account, not comingled with any personal funds, and used exclusively to pay his mother's various expenses. Doc. No. 32-31, p. 34:2–19. At bottom, Plaintiffs' 2018 notes were being impermissibly used "to park assets in friendly hands." *Landy*, 958 F. Supp. 2d at 553.

OKDHS did not violate federal law when it considered Plaintiffs' promissory notes to be trust-like devises, and thus available resources for purposes of determining Plaintiffs' Medicaid eligibility. Defendants are therefore entitled to summary judgment.

### IV.    Plaintiffs' Motion for Summary Judgment

There are two issues raised in Plaintiffs' Motion for Summary Judgment that are not directly addressed in the Court's discussion of Defendants' motion above. First, Plaintiffs argue that the doctrine of issue preclusion forecloses Defendants' right to summary judgment. *See* Doc. No. 28, pp. 17–25. Specifically, Plaintiffs contend that the issues in

---

[16] To the extent Jean or Ivan paid for their mother's care out of their personal accounts, Jivin LLC reimbursed them for their expense. Doc. No. 38, p. 26.

this case relating to Plaintiffs' use of promissory notes are identical to issues that have already been litigated before the Court. *Id.* Defendants respond, arguing that issue preclusion is irrelevant because the cases Plaintiffs cite are factually different from the case now before the Court. Doc. No. 39, pp. 15–19. The Court agrees with Defendants, the doctrine of issue preclusion is not relevant here.

The doctrine of issue preclusion "is designed to prevent needless relitigation and bring about some finality to litigation." *Moss v. Kopp*, 559 F.3d 1155, 1161 (10th Cir. 2009). It "bars a party from relitigating an issue once it has suffered an adverse determination on the issue, even if the issue arises when the party is pursuing or defending against a different claim." *Id.* The doctrine is applicable if four elements are met:

> (1) the issue previously decided is identical with the one presented in the action in question, (2) the prior action has been finally adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party or in privity with a party to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.

*Id.* Here, Plaintiffs fail to satisfy the first element. In their briefing, Plaintiffs list six cases that they claim involve issues that are identical to the issues presented in this case. Doc. No. 28, pp. 22–23 (citing *Gragert v. Lake*, 541 Fed. App'x 853 (10th Cir. 2013); *Frantz v. Lake*, 2014 WL 4204875 (W.D. Okla. Aug. 22, 2014); *Peterson v. Lake*, 2014 WL 2949509 (W.D. Okla. June 30, 2014); *Gragert v. Hendrick*, 2014 WL 287238 (W.D. Okla. Jan. 24, 2014); *Lemmons v. Lake*, No. CIV-12-1075-C, 2013 WL 1187840, at *1–2 (W.D. Okla. Mar. 21, 2013), *vacated as moot on other grounds*, 2013 WL 6913757 (W.D. Okla. June

28, 2013); and *Harper v. Okla. ex rel. Okla. Dep't of Human Serv's*, No. Civ-10-514-R (W.D. Okla. Mar. 22, 2011) (unpublished)).

To be sure, the cases Plaintiffs cite involved issues that the Court deals with here. *See, e.g., Peterson ex rel.*, 2014 WL 2949509, at *4, n.6. However, in addressing those issues in the aforementioned cases, the Court—and in *Gragert*, the Tenth Circuit—came to different conclusions based upon the different facts relevant to each case. *See id.* Consequently, issue preclusion was not relevant in any of those cases. So too here. The facts that relate to the question of whether Plaintiffs' promissory notes were properly counted as available resources differ significantly from the facts in cases the Court has previously decided. For example, in *Frantz*, the Court found that a promissory note was not properly considered a trust-like device, and thus could not be counted as an available resource, because there was "no evidence" suggesting the notes met the criteria for a trust-like device. *Frantz*, 2014 WL 4204875 at *4 n.4. Here, however, that evidence is easily found within the record. *See, e.g.*, Doc. No. 32-2, p. 72:4–12, 32:5–16; Doc. No. 54, p. 21:9–17; Doc. No. 53, p. 44:22–45:20, 56:7–14, 60:17–61:1.

Second, Plaintiffs argue that summary judgment is warranted in their favor because of OKDHS's inconsistent application of the law:  approving of Plaintiffs' loan and note transactions in 2017 and disapproving of similar transactions in 2018. Doc. No. 28, pp. 36–39. Defendants do not appear to address the argument directly, and Plaintiffs failed to file a reply elucidating the issue. Even so, Plaintiffs' argument is not determinative. While the 2017 and 2018 notes have similar contractual obligations, the factual issues surrounding the 2018 notes raised questions of legitimacy that were not apparent when OKDHS

evaluated the 2017 notes. Even so, Defendants do in fact suggest that Plaintiffs' 2017 promissory notes may not have been bona fide. *See, e.g.*, Doc. No. 31, p. 42. But because Plaintiffs challenge OKDHS's administrative determinations—determinations that relied, in part, on the bona fides of the 2018 notes—most of Defendants' discussion at the summary judgment stage is appropriately cabined to the 2018 notes.

Ultimately, Plaintiff is not entitled to summary judgment on the grounds of issue preclusion or OKDHS's alleged inconsistent treatment of Plaintiffs' financial dealings, nor on any other ground raised in their motion that overlaps with those addressed in the Court's discussion of Defendants' Motion for Summary Judgment.

## V.    Conclusion

For the foregoing reasons, the Court hereby grants Defendants' Motion for Summary Judgment, Doc. No. 31, and denies Plaintiffs' Motion for Summary Judgment, Doc. No. 28. The Court also denies Defendants' Motion for Oral Argument, Doc. No. 42, as moot.

**IT IS SO ORDERED** this 13th day of August 2020.

DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE